STATE of Wisconsin, Plaintiff-Respondent,

v.

Christopher J. OATMAN, Defendant-Appellant.

Court of Appeals

*No. 2014AP2084–CR. Submitted on briefs June 23, 2015.
—Decided September 22, 2015.*

**2015 WI App 76**

(Also reported in 871 N.W.2d 513.)

On behalf of the defendant-appellant, the cause was submitted on the briefs of *Donald T. Lang*, assistant state public defender of Madison.

On behalf of the plaintiff-respondent, the cause was submitted on the brief of *Jeffrey J. Kassel*, assistant attorney general, and *Brad D. Schimel*, attorney general.

Before Stark, P.J., Hruz, J., and Thomas Cane, Reserve Judge.

¶ 1. CANE, J. Christopher Oatman appeals a judgment of conviction for eight counts of intentional photographing of a minor by a registered sex offender

without consent, contrary to WIS. STAT. § 948.14.[1] Oatman argues the statute is both unconstitutional as applied and on its face due to overbreadth. Because § 948.14 is unconstitutionally overbroad, we reverse in part and remand with directions to dismiss all such charges against Oatman.[2]

## BACKGROUND

¶ 2. According to the criminal complaint, Oatman photographed or video recorded multiple children playing outside his home. The complaint does not allege that any of sixteen counts involved obscenity, child pornography, or nudity. However, most of the images tended to focus on the buttocks or crotch area of the children.

¶ 3. Oatman moved to declare WIS. STAT. § 948.14 unconstitutional and dismiss the charges. The trial court denied the motion, and we denied Oatman's petition for leave to appeal a nonfinal order. To preserve Oatman's right to challenge the statute's constitutionality on appeal, he and the State agreed to a form of stipulated trial, which the parties labeled a "Confessional Stipulation." Under the written agreement, Oatman stipulated to the evidence of guilt on eight charges, and the State agreed not to argue Oatman had forfeited his right to appeal the constitutionality issue.

¶ 4. Consistent with the parties' agreement, the trial court found Oatman guilty, as a habitual criminal, of eight counts of photographing a minor without

---

[1] All references to the Wisconsin Statutes are to the 2013–14 version unless otherwise noted.

[2] Oatman was also convicted of one count of burglary, which he does not appeal. The judgment of conviction is therefore affirmed with respect to that charge.

parental consent.[3] The court imposed a twenty-eight-year sentence comprised of consecutive sentences on the eight counts, each consisting of one and one-half years' initial confinement and two years' extended supervision.[4] Oatman now appeals.

## DISCUSSION

■■

¶ 5. Oatman argues Wis. Stat. § 948.14 violates the First Amendment, both as applied to him and on its face due to overbreadth.[5] The constitutionality of a statute presents a question of law subject to de novo review. *State v. Stevenson*, 2000 WI 71, ¶ 9, 236 Wis. 2d 86, 613 N.W.2d 90. Statutes generally benefit from a presumption of constitutionality that must be refuted. *Id.*, ¶ 10. However, when, as here, the statute implicates the exercise of First Amendment rights, the burden shifts to the government to prove beyond a reasonable doubt that the statute passes constitutional muster. *See id.*

■

¶ 6. Those who challenge a statute's constitutionality "generally must have a personal and vested interest in the outcome of the litigation, demonstrating the statute's unconstitutional application to their individual conduct." *Id.*, ¶ 12. First Amendment chal-

---

[3] The judgment of conviction indicates the eight remaining child-photography counts were dismissed but read-in.

[4] A four-year sentence on the burglary charge was ordered to be served concurrently with the child-photography charges.

[5] Oatman also asserts the statute violates article I, section 3 of the Wisconsin Constitution, but he acknowledges the state constitution has been construed to provide the same freedoms as the federal constitution, citing *State v. Robert T.*, 2008 WI App 22, ¶ 6, 307 Wis. 2d 488, 746 N.W.2d 564.

lenges, however, are excused from this requirement "due to the gravity of a 'chilling effect' that may cause others not before the court to refrain from constitutionally protected speech or expression." *Id.* (citations omitted). Thus, "challengers may champion the free expression rights of others [even] when their own conduct garners no protection." *Id.*

¶ 7. This exception to the personal-application requirement is known as the overbreadth doctrine. As our supreme court recently reaffirmed, " 'broadly written statutes substantially inhibiting free expression should be open to attack even by a party whose own conduct remains unprotected under the First Amendment.' " *State ex rel. Two Unnamed Petitioners v. Peterson*, 2015 WI 85, ¶ 52, 363 Wis. 2d 1, 866 N.W.2d 165 (quoting *Stevenson*, 236 Wis. 2d 86, ¶ 11); *see also Thornhill v. Alabama*, 310 U.S. 88, 97–98 (1940). " 'A statute is overbroad when its language, given its normal meaning, is so sweeping that its sanctions may be applied to constitutionally protected conduct [that] the state is not permitted to regulate.' " *Two Unnamed Petitioners*, 363 Wis. 2d 1, ¶ 52 (quoting *State v. Janssen*, 219 Wis. 2d 362, 374, 580 N.W.2d 260 (1998)).

¶ 8. However, courts "should only sparingly utilize the overbreadth doctrine as a tool for statutory invalidation, proceeding with caution and restraint." *Stevenson*, 236 Wis. 2d 86, ¶ 14. "Particularly where, as here, conduct and not merely speech is involved, the overbreadth of a statute must be both 'real' and 'substantial,' 'judged in relation to the statute's plainly legitimate sweep.' " *Janssen*, 219 Wis. 2d at 373 (quoting *Broadrick v. Oklahoma*, 413 U.S. 601, 615 (1973)). Accordingly, we will not invalidate the photography-of-

a-minor statute based on mere "[m]arginal infringe-
ment or fanciful hypotheticals of inhibition." *See
Stevenson*, 236 Wis. 2d 86, ¶ 14.

¶ 9.   Subsection 948.14(2) provides:

> (a) A sex offender may not intentionally capture a
> representation of any minor without the written con-
> sent of the minor's parent, legal custodian, or guard-
> ian. The written consent required under this para-
> graph shall state that the person seeking the consent
> is required to register as a sex offender with the
> department of corrections.
>
> (b) Paragraph (a) does not apply to a sex offender who
> is capturing a representation of a minor if the sex
> offender is the minor's parent, legal custodian, or
> guardian.

Additionally, subsec. 948.14(1) defines "captures a rep-
resentation" and "representation," by reference to an-
other statute. Thus:

> (a) "Captures a representation" means takes a photo-
> graph, makes a motion picture, videotape, or other
> visual representation, or records or stores in any
> medium data that represents a visual image.
>
> . . . .
>
> (c) "Representation" means a photograph, exposed
> film, motion picture, videotape, other visual represen-
> tation, or data that represents a visual image.

WIS. STAT. § 942.09(1)(a), (c).[6]

---

[6] WISCONSIN STAT. § 942.09 is titled, "Representations de-
picting nudity." A prior version of that statute was declared
facially overbroad in *State v. Stevenson*, 2000 WI 71, 236
Wis. 2d 86, 613 N.W.2d 90.

¶ 10. Oatman argues, and the State partly agrees, that the First Amendment protects the right to take nonobscene, nonpornographic photographs of children in public places. *See Kaplan v. California*, 413 U.S. 115, 119–20 (1973) (recognizing that First Amendment protection for movies and photographs does not extend to obscenity). But, whereas Oatman argues all creation of such pictures is protected, the State argues photographs taken merely for personal viewing are not protected.[7] Rather, the State argues photographs are only constitutionally protected if they are created with an expressive or communicative intent, i.e., an intent to share the photographs with others. We need not resolve this controversy. Because we conclude the statute is overly broad on its face, we need not address whether it is also unconstitutional as applied to Oatman. *See State v. Castillo*, 213 Wis. 2d 488, 492, 570 N.W.2d 44 (1997) (Appellate courts are not required to address every issue raised when one issue is dispositive.).

¶ 11. The State acknowledges the following:

If the taking of photographs and video recordings for purely personal use were protected by the First Amendment, the State would concede that WIS. STAT. § 948.14 is overly broad. The statute is content based,

---

[7] The cases cited by the State involve circumstances where citizens were arrested, charges were dropped, and the citizens then sued authorities for infringement of their individual First Amendment rights. *See Larsen v. Fort Wayne Police Dep't*, 825 F. Supp. 2d 965 (N.D. Ind. 2010); *Porat v. Lincoln Towers Cmty. Ass'n*, 2005 WL 646093 (S.D.N.Y. 2005), *aff'd*, 464 F.3d 274 (2d Cir. 2006). Thus, in those cases, the courts had no occasion to address statutory overbreadth.

as it applies only to capturing images of children. The statute would be subject to strict scrutiny, requiring the State to demonstrate that the statute is necessary to serve a compelling state interest and that it is narrowly drawn to achieve that end. *State v. Baron*, 2009 WI 58, ¶¶ 15, 45, 318 Wis. 2d 60, 769 N.W.2d 34. The State does not believe it could satisfy that burden. While the State has a compelling interest in protecting children, the statute is not narrowly drawn because it applies to all registered sex offenders, including those with no history of abusing children.

We agree with Oatman and the State that, because it only regulates images of children, § 948.14 is not content neutral. "Content-based regulations are presumptively invalid." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 382 (1992).

¶ 12.    If a statute is content based, it must withstand strict scrutiny. *Baron*, 318 Wis. 2d 60, ¶ 14. As the Supreme Court recently held, to satisfy strict scrutiny, the provision "must be the least restrictive means of achieving a compelling state interest." *McCullen v. Coakley*, 134 S.Ct. 2518, 2530 (2014). Further, the Court has "reaffirm[ed] that it is the rare case in which we have held that a law survives strict scrutiny." *Burson v. Freeman*, 504 U.S. 191, 211 (1992); *see also Baron*, 318 Wis. 2d 60, ¶ 48. The statute at issue here neither protects a compelling state interest nor is it narrowly drawn.

¶ 13.    The State undeniably has a compelling interest in protecting children. However, WIS. STAT. § 948.14 does little, if anything, to further that interest. Indeed, it appears to carry the potential of more harm than good. The statute requires all registered sex offenders to seek and obtain parental permission prior

to photographing a child.[8] But how does one subject to the statute know the identity of a child's parents or whether those parents are available to give consent? The sex offender's only option to obtain consent from an apparently unsupervised child is to approach the child and then inquire, "Are your parents nearby?" Thus, the statute may encourage sex offenders to make close contact with children. An individual with nefarious intent might even use the statute as a ruse to approach a child or determine whether the child is, in fact, vulnerable. If such predators' conduct was ultimately questioned, they could simply explain they were attempting to follow the law.

¶ 14. Further, children are not harmed by non-obscene, nonpornographic photographs taken in public places. In *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 240, 256 (2002), the Court concluded the Child Pornography Prevention Act (CPPA) was unconstitutionally overbroad insofar as it prohibited the possession or distribution of images that were neither obscene under the definition of *Miller v. California*, 413 U.S. 15 (1973), nor constituted child pornography as defined in *New York v. Ferber*, 458 U.S. 747 (1982). The CPPA extended the federal prohibition against child pornography to sexually explicit images that appeared to depict minors but were produced without using any real children. *Ashcroft*, 535 U.S. at 239.

¶ 15. The Ashcroft decision reasoned that the images did not harm any children in the production process, *id.* at 241, and differentiated such images from child pornography, where the recorded acts are intrinsically related to victims of actual sexual abuse,

---

[8] Our general references to photography are inclusive of all visual images regulated by the statute.

*id.* at 249–50. Rather, the Court observed, "the CPPA prohibits speech that records no crime and creates no victims by its production." *Id.* at 250. The Court also rejected the argument that the images might encourage child abuse, holding, "The prospect of crime, however, by itself does not justify laws suppressing protected speech." *Id.* at 245. It explained, "While the Government asserts that the images can lead to actual instances of child abuse, . . . the causal link is contingent and indirect. The harm does not necessarily follow from the speech, but depends upon some unquantified potential for subsequent criminal acts." *Id.* at 250. The Court again "reaffirmed that where the speech is neither obscene nor the product of sexual abuse, it does not fall outside the protection of the First Amendment." *Id.* at 251 (citing *Ferber*, 458 U.S. at 764–65).

¶ 16. The prohibited images addressed in *Ashcroft*—virtual or simulated images of child pornography—were far more objectionable or potentially harmful than the images prohibited by WIS. STAT. § 948.14. Thus, the foundation of that case is no less relevant here, and bears repeating:

> The evil in question depends upon the actor's unlawful conduct, conduct defined as criminal quite apart from any link to the speech in question. This establishes that the speech ban is not narrowly drawn. The objective is to prohibit illegal conduct, but this restriction goes well beyond that interest by restricting the speech available to law-abiding adults.
>
> . . . .
>
> The mere tendency of speech to encourage unlawful acts is not a sufficient reason for banning it. The government "cannot constitutionally premise legisla-

tion on the desirability of controlling a person's private thoughts." *Stanley v. Georgia*, 394 U.S. 557, 566 (1969). First Amendment freedoms are most in danger when the government seeks to control thought or to justify its laws for that impermissible end. The right to think is the beginning of freedom, and speech must be protected from the government because speech is the beginning of thought.

To preserve these freedoms, and to protect speech for its own sake, the Court's First Amendment cases draw vital distinctions between words and deeds, between ideas and conduct.

*Id.* at 252–53. Accordingly, while we may dislike the fact that someone might have objectionable thoughts when viewing ordinary images of children, the State is constitutionally prohibited from precluding citizens from creating such images.[9]

¶ 17. In addition to failing to protect any compelling State interest, WIS. STAT. § 948.14 is not narrowly tailored. Its prohibitions extend to all images of children, otherwise regardless of content. Indeed, it is difficult to imagine a content-based regulation that would be more *broadly* tailored. Any argument that the statute is not overbroad because it applies only to registered sex offenders would be a nonstarter.[10] Those

[9] We recently held that the definition of "captures a representation" in WIS. STAT. § 942.09(1)(a) does not include the mere possession of images, as opposed to their creation. *See State v. Chagnon*, 2015 WI App 66, ¶¶ 26–28, 364 Wis. 2d 719, 870 N.W.2d 27.

[10] We would also reject any assertion that the statute's parental consent exception saves the statute's constitutionality. The limited ability to obtain parental consent is insufficient to remove or minimize the statute's chilling effect. Most persons subject to the statute would likely be apprehensive, if not outright fearful, of seeking the required consent, which

citizens have the same First Amendment rights as any other. *Doe v. Harris*, 772 F.3d 563, 570–72 (9th Cir. 2014) (Registered sex offenders who have completed their terms of probation and parole enjoy the "full protection of the First Amendment.").

¶ 18. The State's only argument against overbreadth is its assertion that Wis. Stat. § 948.14 does not prohibit a substantial amount of constitutionally protected communicative conduct. Because the statute applies to capture of nearly all images of children in public places, we unreservedly reject that assertion. Even accepting, arguendo, the State's argument that photographs captured exclusively for personal viewing are not constitutionally protected, all other photographs subject to the statute would have First Amendment protection. Sharing images is customarily the very reason for photography. While the statute's application to registered sex offenders is so vast as to defy full description, it would impermissibly preclude, for example, newspaper photojournalists from capturing images of children meeting with politicians, professional photographers from taking school yearbook pictures, and proud parents from photographing their child with classmates on the first day of kindergarten for sharing with grandparents. Even more so than the statute reviewed in *Stevenson*, Wis. Stat. § 948.14 "indiscriminately casts a wide net over expressive conduct protected by the First Amendment . . . ." *See Stevenson*, 236 Wis. 2d 86, ¶ 22. Thus, the statute's

requires disclosure of their registered-sex-offender status. Moreover, consent would be impossible where parents are not present, not be practical in large group settings such as a sporting event, and substantially curtail the ability to capture spontaneous images.

255

infringement of protected expression is real and substantial. *See Janssen*, 219 Wis. 2d at 373.

■

¶ 19. We have concluded Wis. Stat. § 948.14 is overbroad on its face.

> Having determined that a particular statute is overbroad, courts may pursue one of several options. First, courts may apply a limiting construction to rehabilitate the statute when such a narrowing and validating construction is readily available. Second, courts may cure the constitutional defect by severing the unconstitutional provisions of a statute and leaving the remainder of the legislation intact. Finally, courts may determine that the statute is not amenable to judicial limitation or severance and invalidate the entire statute upon a determination that it is unconstitutional on its face.

*Stevenson*, 236 Wis. 2d 86, ¶ 15 (citations omitted). The State does not argue the statute is amenable to a limiting construction or severance, and we likewise do not discern any appropriate modification available to save the statute. Accordingly, we invalidate § 948.14 in its entirety, and we direct the trial court to dismiss all such charges against Oatman.

*By the Court.*—Judgment affirmed in part; reversed in part and cause remanded with directions.